UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Prime Therapeutics LLC,

                Plaintiff,

                                  Civ. No. 08-375 (RHK/JSM)
                                  **MEMORANDUM OPINION AND ORDER**

v.

Omnicare, Inc.,

                Defendant.

Bret A. Puls, Meghan M. Anzelc, Oppenheimer Wolff & Donnelly LLP, Minneapolis, Minnesota, for Plaintiff.

Brian S. McGrath, Harvey Kurzweil, Urvashi Sen, Dewey & LeBoeuf LLP, New York, New York, Matthew M. Walsh, Dewey & LeBoeuf LLP, Los Angeles, California, Michael R. Gray, Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

      Prime Therapeutics LLC ("Prime") seeks to vacate an arbitration award and Omnicare, Inc. ("Omnicare") seeks to confirm it. The arbitration involved a contract dispute over the reimbursement of copayments on prescription drugs that were dispensed under the federally funded Medicare Part D program. The arbitrator held that Prime breached the agreement when it failed to reimburse Omnicare for these copayments. For the reasons set forth below, the Court will deny Prime's motion to vacate the arbitration award and will grant Omnicare's motion to confirm it.

## BACKGROUND

"Enacted in 1965, Medicare is a federally run health insurance program benefitting primarily those who are 65 years of age and older." First Med. Health Plan, Inc. v. Vega-Ramos, 479 F.3d 46, 48 (1st Cir. 2007) (citation omitted); see also Matthews v. Leavitt, 452 F.3d 145, 147 n.1 (2d Cir. 2006) (detailing Medicare coverage). In addition, "[e]ach state administers a Medicaid program (with substantial federal funding) to provide medical coverage to its economically disadvantaged population." Id. In 2003, Congress passed the Medicare Prescription Drug Improvement and Modernization Act, which established a prescription drug benefit program under Medicare Part D to subsidize the out-of-pocket prescription drug costs for individuals eligible for federal assistance. See Pub. L. No. 108-173, 117 Stat. 2066 (2003) ("Part D Plans"). The Medicare Part D program became effective on January 1, 2006, and is administered by the Centers for Medicare and Medicaid Services ("CMS"). (McGrath Aff. Ex. A. at 3; see also 42 U.S.C. § 1395w-101.)

Many enrollees in a Part D Plan are "institutionalized dual eligibles," defined as individuals who have Medicare Part D coverage for an entire month, have been "determined eligible by the State" for full Medicaid benefits for the same month, and have been inpatients in a nursing facility, with the stay paid for by Medicaid, throughout the entire month. 42 C.F.R. §§ 423.772, 423.782(a)(2)(ii); see also 42 U.S.C. §§ 1396u-5(c)(6), 1369u-5(a)(2). Their dual enrollment in Medicare and Medicaid exempts them from the "cost-sharing" amounts such as copayments that would otherwise be payable by beneficiaries under a Part D Plan. See 42 C.F.R. § 423.782.

Various health-insurance companies contract with CMS to administer the Part D Plans. (Pl.'s Mem. at 1-2, 6-7.) CMS reimburses the sponsors of Part D Plans who, in turn, pay the pharmacies for the amount of copayments not collected by them from eligible beneficiaries. (Id. 2, 7-8.) Prime is a pharmacy-benefit manager that provides administrative services in processing prescription claims on behalf of health-insurance companies that sponsor the Part D Plans. (Id. at 4.) Omnicare is a pharmacy chain that provides prescription medications to senior citizens in nursing homes and other long-term care facilities. (Id.)

In 2005, Prime and Omnicare entered into a Pharmacy Network Agreement (the "Agreement"). (Doc No. 1 Ex. A.) The parties agreed to comply with all Part D Rules in connection with fulfilling their respective obligations. (Id. § 5.1.) Under the Agreement, Omnicare is required to check with Prime via an on-line system to determine if the individual for whom a prescription is being sought is enrolled under the Part D Plan with Prime and has been identified by CMS as dual-eligible and therefore exempt from having to make a copayment. (Id. §§ 2.5, 2.8.) Prime advises Omnicare via the on-line system as to whether it should charge and collect a copayment. (Id. § 3.) But, in the event Omnicare believes that an individual is or may be eligible for a copayment subsidy, Section 2.5(b) permits Omnicare not to collect a copayment from the individual and to submit a claim for reimbursement after the individual is determined to be eligible for the subsidy. The Agreement also precludes Omnicare from charging an enrollee of the Part D Plan "for products or services that are the responsibility of the Part D Plan Sponsor." (Id. § 5.3(d).) Finally, if the parties are unable to resolve any dispute arising under the

terms of the Agreement, "either party may submit the dispute to binding arbitration . . . [and] [t]he arbitrator may determine all questions of law . . . [and] has the right to grant permanent and interim damages or injunctive relief . . . ." (Id. § 7.1(b).)

The roll out of the Medicare Part D program was not without operational problems. (Pl.'s Mem. at 9.) Eligibility data from CMS was not always current and consequently would incorrectly reflect that an individual owed a copayment. (Id.) CMS encouraged the pharmacies to fill the prescriptions if the pharmacy believed the individual was eligible. (McGrath Aff. Ex. A at 5.) In 2006, CMS issued instructions to all Part D sponsors for reconciling low-income subsidy status and implementing a Best Available Evidence ("BAE") policy. (Id.)

With respect to the claims in this arbitration, Prime advised Omnicare that the individuals were ineligible based on the data it had from CMS. (Id. at 3-4.) Omnicare, however, believed that the individuals were eligible and went ahead and dispensed the prescription drug without charging a copayment. (Id.) It then submitted these claims to Prime for reimbursement. (Id.) Prime refused to reimburse Omnicare, arguing that Omnicare must support its claim for reimbursement with BAE. (Id.) In May 2007, Omnicare filed a demand for arbitration. (Id. at 1.)

The arbitrator determined that "[a]though it is Prime's right and responsibility to initially determine eligibility, Omni has the responsibility under the Agreement not to collect the co-pays in spite of Prime's denial of eligibility if Omni knows that the enrollee is or may be eligible." (Id. at 9.) He explained that "pending" the claim – that is, creating receivables rather than charging the patients – was Omnicare's way of informing

4

Prime that it knew that the individual "is or may be eligible" for not having to pay a copayment. (Id.) He also found that the Agreement did not require Omnicare to provide BAE to Prime in order for Omnicare to be entitled to reimbursement of the copayments. (Id. at 9-11.) Instead, he determined that the sponsors of the Part D Plans, in this case Prime, had the responsibility to provide BAE to CMS. (Id.) Accordingly, he concluded that Prime breached the Agreement and ordered Prime to reimburse $554,281 in copayments to Omnicare. (Id. at 8-9, 12.)[1]

The parties' cross motions to confirm and vacate the arbitration award followed.

## STANDARD OF DECISION

The Agreement in this case is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.* Under the FAA, a court must confirm an arbitration award, except in the following narrow circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[1] If CMS ultimately determined that an individual was not eligible then Prime could seek reimbursement from the beneficiary. (4/24/08 Tr. at 19-20.)

5

9 U.S.C. §§ 9-10(a). This Court's review of an arbitration award is very limited and the arbitrator's decision is entitled to "an extraordinary level of deference." Stark v. Sandberg, Phoenix & Von Gontard, 381 F.3d 793, 798 (8th Cir. 2004) (explaining that an arbitration award "must be confirmed even if a court is convinced that the arbitrator committed a serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within his authority"); Bhd. of Maint. of Way Employees v. Terminal R.R. Ass'n, 307 F.3d 737, 739 (8th Cir. 2002) (noting that a court's "scope of review of the arbitration award itself is among the narrowest known to the law").

## ANALYSIS

Prime seeks to vacate the arbitration award on the following grounds: (1) the arbitrator exceeded his authority by making determinations exclusively reserved for CMS, (2) the arbitrator ignored the plain and unambiguous language of the Agreement, and (3) the arbitrator's decision was in manifest disregard of the law.[2] Prime's first argument – that the arbitrator exceeded his authority – is the only one that arguably falls within the FAA. See 9 U.S.C. § 10(a)(4). In addition to the grounds enumerated in the FAA, the Eighth Circuit has recognized two "extremely narrow" extra-statutory grounds for vacating an arbitration award: (1) where the award is either completely irrational or (2) it manifests a disregard of the law. Hoffman v. Cargill, Inc., 236 F.3d 458, 461 (8th Cir. 2001). But, as Omnicare points out in its brief, the Supreme

---

[2] Prime also argues that the arbitration award violates public policy because the arbitrator failed to follow federal law and that the award exposes Prime to potential government action for non-compliance with Part D and its rules, regulations, and guidance. (See Pl.'s Mem. at 25-32.) The Court finds that these extra-statutory grounds are without merit.

6

Court recently held that Section 10 of the FAA provides the exclusive grounds for vacating an arbitration award. (Def.'s Opp'n Mem. at 5-6 (citing Hall Street Assocs., L.L.C. v. Mattel, Inc., Civ. No. 06-989, __ U.S. __, 2008 WL 762537 at *4 (March 25, 2008)).) Prime, however, argues that the Supreme Court did not overrule judicially-created grounds for vacating an arbitration award. (Pl.'s Reply Mem. at 3-4.)

## I.     The Hall Street Decision

The dispute in Hall Street arose out of a lease between Hall Street Associates, L.L.C. ("Hall Street"), the landlord, and Mattel, Inc. ("Mattel"), the tenant, for commercial property. Hall Street, 2008 WL 762537, at *2. The property was used as a manufacturing site and the lease provided that the tenant would indemnify the landlord for any costs resulting from the failure to follow environmental laws while using the premises. Id. Mattel gave notice of termination when it discovered that well water on the property was contaminated. Id. at *3. Hall Street filed suit claiming that Mattel was required to indemnify Hall Street for actions relating to the condition of the property, including water contamination. Id. The United States District Court for the District of Oregon found that Mattel had a right to terminate the lease. Id. The parties then proposed to arbitrate a claim that the lease required Mattel to indemnify Hall Street for the costs of cleaning up the lease site. Id. The court approved the arbitration agreement, which included a provision requiring the court to "vacate, modify, or correct any award: (i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." Id.

The arbitrator ruled in favor of Mattel and found that no indemnification was due "because the lease obligation to follow all applicable federal, state, and local environmental laws did not require compliance with the testing requirements of the Oregon Drinking Water Quality Act (Oregon Act); that Act the arbitrator characterized as dealing with human health as distinct from environmental contamination." Id. Hall Street moved to vacate, modify, or correct the arbitrator's decision on the ground that it was legal error when the arbitrator failed to consider the Oregon Act as an applicable environmental law. Id. The district court agreed; it granted Hall Street's motion to vacate the award and remanded the matter to the arbitrator. Id.

On remand, the arbitrator ruled in favor of Hall Street. Both sides sought review of the arbitrator's second award. Id. The district court largely upheld the award. Id. The Ninth Circuit, however, vacated the district court's decision and remanded with instructions to confirm the original award unless the district court determined that the award should be vacated or modified under the limited grounds provided in the FAA. Id. at *3-4. The district court again ruled in favor of Hall Street and vacated the arbitration award, finding that the arbitrator's decision rested on an implausible interpretation of the lease and thus exceed the arbitrator's powers, in violation of Section 10 of the FAA. Id. at *4. Mattel appealed and the Ninth Circuit again reversed, holding that implausibility is not a valid ground for vacating or correcting an award under Section 10 or Section 11 of the FAA. Id. The Supreme Court then granted Hall Street's petition for review to decide whether the grounds for vacatur and modification provided by Sections 10 and 11 of the FAA are exclusive. Id.

8

In a 6-3 decision, the Supreme Court held that Sections 10 and 11 of the FAA provide the exclusive grounds for vacating and modifying an arbitration award.[3] Id. In so holding, it rejected Hall Street's arguments that the statutory grounds for vacating or modifying an arbitration award were not exclusive. Id. at *5. Hall Street first argued that "expandable judicial review" has been recognized since Wilko v. Swan, 346 U.S. 427 (1953). In Wilko, the Supreme Court held that the "[p]ower to vacate an [arbitration] award is limited," and that "the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation." Id. at 436. Hall Street interpreted this language as recognizing "manifest disregard of the law" as a further ground for vacatur on top of those listed in Section 10. Hall Street, 2008 WL 762537, at *5. The Supreme Court disagreed, noting that "[q]uite apart from its leap from a supposed judicial expansion by interpretation to a private expansion by contract, Hall Street overlooks the fact that the statement it relies on expressly rejects just what Hall Street asks for here, general review for an arbitrator's legal errors." Id. The Court also observed "the vagueness of Wilko's phrasing": Was "manifest disregard" meant to be a new ground for review, or simply a collective reference to the grounds in Section 10 of the FAA, or shorthand for Sections 10(a)(3) or 10(a)(4), the subsections authorizing vacatur when arbitrators were "guilty of misconduct" or "exceeded their powers"? Id. It concluded that Wilko did not create grounds for vacatur separate and apart from Section 10 of the FAA. Id.

---

[3] Although the Supreme Court agreed with the Ninth Circuit that the FAA's grounds for vacating and modifying arbitration awards are exclusive, it vacated the judgment and remanded for consideration of other issues. See Hall Street, 2008 WL 762537, at *2, *9.

The Supreme Court also rejected Hall Street's argument that the parties' contractual standard of review should apply because the FAA is designed to enforce contractual agreements.  Id. at *6.  The Court explained that although there is a "general policy of treating arbitration agreements as enforceable . . . the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration."  Id.  Even assuming Sections 10 and 11 could be supplemented to some extent, the Supreme Court concluded that "it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally."  Id.  It found that expansion would be inconsistent with the language of Section 9 of the FAA, which states that a court "must grant" an application for an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  Id.  Notably, the Supreme Court emphasized that there is "no hint of flexibility" in this language: courts are directed that they "must" confirm an award "unless" it is vacated or modified "as prescribed" by Sections 10 and 11.  Id.

## II.     Impact of the Hall Street Decision

The Supreme Court has made clear that Sections 10 and 11 of the FAA provide the exclusive grounds for vacating and modifying an arbitration award.  It is also clear from Hall Street that parties cannot contractually alter the FAA's grounds for vacating or modifying arbitration awards.  In other words, parties cannot contractually agree to expand the scope of judicial review to give courts the power to vacate an arbitration award due to the arbitrator's "manifest disregard of the law" in a proceeding governed by the FAA.  But does this suggest that courts can no longer vacate an arbitration award

based on judicially-created grounds such as "manifest disregard of the law"? After <u>Hall Street</u>, this Court believes the answer to that question is yes. It would be somewhat inconsistent to say that the parties cannot contractually alter the FAA's exclusive grounds for vacating or modifying an arbitration award, but then allow the courts to alter the exclusive grounds by creating extra-statutory bases for vacating or modifying an award. As the Supreme Court explained:

> Instead of fighting the text, it makes more sense to see the three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in post-arbitration process.

<u>Id.</u> at *7 (internal quotations and citations omitted). Although Hall Street argued that "parties will flee from arbitration if expanded review is not open to them," the Court concluded that "whatever the consequences of our holding, the statutory text gives us no business to expand the statutory grounds." <u>Id.</u>

Therefore, this Court's review of a motion to vacate or modify an arbitration award is limited to the exclusive grounds listed in Sections 10 and 11 of the FAA. Because Prime's first argument – that the arbitrator exceeded his authority – is the only one that falls within the FAA, <u>see</u> 9 U.S.C. § 10(a)(4), it need not address Prime's extra-statutory grounds for vacating the arbitration award – that the arbitrator ignored the plain and unambiguous language of the Agreement and that the arbitrator's decision was in manifest disregard of the law.

11

**III.    The arbitrator did not exceed his authority**

Prime contends the arbitrator exceeded his authority when he invaded CMS's exclusive authority to determine eligibility for copayment subsidies. The Court disagrees. The scope of an arbitrator's authority is defined by the Agreement providing for arbitration. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002). "In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority." United Food & Commercial Workers, Local No. 88 v. Shop 'N Save Warehouse Foods, Inc., 113 F.3d 893, 895 (8th Cir. 1997).

Here, the parties agreed to submit their dispute to binding arbitration. Notably, the arbitrator had the power to determine all questions of law and grant damages or injunctive relief. The Court finds that the arbitrator did not exceed his broad grant of authority in deciding this dispute because his decision encompassed issues properly submitted to arbitration pursuant to the parties' Agreement. He reviewed the parties' prehearing briefs, conducted a two-day hearing, considered the parties' posthearing briefs, and reopened the hearing for the purpose of permitting Omnicare an opportunity to clarify its damages claim. The arbitrator issued his decision and concluded that Prime breached the Agreement when it failed to pay Omnicare for the copayments. He did not make any eligibility determinations, but merely found that Omnicare met its burden of showing that the individuals are or may be eligible for the subsidies. Accordingly, the arbitrator rendered an award of damages in the amount of $554,281. Each of these determinations was within the scope of his authority.

## CONCLUSION

"Arbitration is not a perfect system of justice, nor [is it] designed to be." Hoffman, 236 F.3d at 462.  Rather, it "is designed primarily to avoid the complex, time-consuming and costly alternative of litigation."  Id.  Here, the parties agreed to resolve their dispute through binding arbitration and "[a] restrictive standard of review is necessary to preserve these benefits and to prevent arbitration from becoming a 'preliminary step to judicial resolution.'"  Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir. 1994) (citation omitted).  "Having entered such a contract, both parties must subsequently abide by the rules to which [they] agreed."  Hoffman, 236 F.3d at 463 (citation omitted).  Because the Court concludes that Prime has failed to establish grounds for vacating the arbitration award, it must be confirmed.  See  9 U.S.C. § 9.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Prime's Motion to Vacate the Arbitration Award (Doc. No. 14) is **DENIED**, and Omnicare's Motion to Confirm the Arbitration Award (Doc. No. 10) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  May 21, 2008

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge